UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re ) | |
| ) | |
| JAMES NEWELL CHARLES, ) | Case No. 6:11-bk-14989-KSJ |
| ) | Chapter 7 |
| Debtor. ) | |
| ) | |
| | |
| JEFFREY ATWATER, in his official ) | |
| capacity as Florida Chief Financial officer, ) | |
| and the STATE RISK MANAGEMENT ) | |
| TRUST FUND, ) | |
| ) | |
| Plaintiffs, ) | |
| vs. ) | Adversary No. 6:12-ap-00011-KSJ |
| ) | |
| JAMES NEWELL CHARLES, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM OPINION GRANTING MOTION OF PLAINTIFFS
AND COUNTERCLAIM DEFENDANTS FOR FINAL SUMMARY JUDGMENT**

James Newell Charles, a lawyer, is a Chapter 7 Debtor and Defendant in this adversary proceeding. Charles owes a debt for attorney fees and costs to the Plaintiffs, Jeffrey Atwater as Chief Financial Officer of the State of Florida and the State Risk Management Trust Fund (the "Fund"), in the amount of $407,363.95. Plaintiffs now seek a determination that the debt is nondischargeable under §§ 523(a)(4), 523(a)(6), and 523(a)(7) of the Bankruptcy Code.[1] The saga of litigation that created this debt began in 1998 and demonstrates why I now hold the debt nondischargeable.

---

[1] Doc. No. 1. All references to the Bankruptcy Code refer to 11 U.S.C. § 101 *et. seq.*

Charles, in 1998, represented Michael Dupont, a plaintiff in a federal civil rights lawsuit against a Florida government agency and its employees in federal district court.[2] After three of the original four defendants were dismissed from the suit, the remaining defendant died, and Charles, on Dupont's behalf, reached a *Coblentz* agreement[3] (the "Agreement") with that defendant's estate.[4] Under the Agreement, Dupont was only permitted to collect from the estate's purported insurer—the Fund—which was established by the Florida legislature to provide insurance for federal civil rights actions against state employees.[5] The Agreement, adopted as a consent judgment by a federal district court, required the Fund to pay Charles and his client a total of $525,670.70.[6]

After the Fund refused his demand for payment of the judgment, Charles initiated a lawsuit in the Florida Seventh Circuit Court ("Circuit Court") to enforce the Agreement.[7] The Fund argued that the Agreement was unenforceable because it was unreasonable, not made in

---

[2] *Gallagher v. Dupont*, 918 So. 2d 342, 344 (Fla. 5th DCA 2005). Much of this history has been summarized in numerous other opinions, including this Court's most recent one. Doc. No. 53.

[3] A "*Coblentz* agreement" is an agreement between an insured and a tort-plaintiff with three distinct elements: (1) a judgment against the insured, establishing its liability and amount of damages; (2) a covenant not to execute, of the tort-plaintiff, freeing the insured from any obligation to pay the judgment amount and making its insurance carrier the source of recoverable funds; and (3) an assignment by the insured of its rights against its insurance carrier to the tort-plaintiff. A type of consent judgment, the term dates to a Fifth Circuit case that endeavored to interpret Florida law. *Coblentz v. Am. Sur. Co. of New York*, 416 F.2d 1059 (5th Cir. 1969). It was adopted as Florida law in 1984. *Steil v. Florida Physicians' Ins. Reciprocal*, 448 So. 2d 489 (Fla. 2d DCA 1984).

[4] *Gallagher*, 918 So. 2d at 345.

[5] *See* Fla. Stat. § 284.30 (2013); *Gallagher*, 918 So. 2d at 344. *See generally Badillo v. Thorpe*, 158 Fed. Appx. 208, 213 (11th Cir. 2005) (discussing Fla. Stat. § 284.30).

[6] *Gallagher*, 918 So. 2d at 344-45. Of this total, Dupont was to receive $300,000 as compensation for his injuries and the Defendant $225,000 for his legal services. Doc. No. 26-1 at 2.

[7] This included a suit against the Fund and also a writ of mandamus against Florida's Chief Financial Officer. *See Gallagher*, 918 So. 2d at 348-49 ("[M]andamus is available to require such an official to satisfy a judgment against him.").

good faith, and arose from fraud and collusion.[8] After prolonged litigation, the Circuit Court ultimately ruled that the Agreement was unenforceable, concluding that Dupont's claim lacked "adequate support in law or in fact."[9] The court went on to hold that, despite these shortcomings, Charles "tr[ied] to *create* a claim by a series of acts designed to advance a claim for his client that is unsupported by the facts and the law."[10] The Circuit Court's Final Judgment[11] ("Final Judgment") paints a scathing picture of the deceptive and fraudulent tactics used by Charles to obtain and enforce the Agreement.[12]

The Circuit Court in the Final Judgment made four critical factual and legal determinations relevant to the issues before this Court. First, Charles "relied on a *contrived artifice* that he dressed up as a *Coblentz* Agreement" so as to "*coerce*[] the attorney for the Estate into submission on a shadowy claim of malpractice against both the attorney and personal representative."[13] Second, Charles knew of his lack of "competent, substantial evidence for his client's damage claim, fee or costs."[14] Specifically, Charles blatantly lied by representing in the original agreement that the amount of damages and attorney fees had been reviewed by an independent expert, Mr. Roper.[15] In fact, Mr. Roper testified he never reviewed the amounts.[16] Moreover, despite knowing of its falsity, Charles made this same "misrepresentation" to two

---

[8] *See generally id.* at 348-49; *Ahern v. Odyssey Re (London) Ltd.*, 788 So. 2d 369, 372 (Fla. 4th DCA 2001) (holding that "[i]n order to enforce a consent judgment, the injured party must bring an action against the insurer and prove [1] coverage, [2] wrongful refusal to defend, and [3] that the settlement was reasonable and made in good faith" (internal quotation marks omitted) (quoting *Indep. Fire Ins. Co. v. Paulekas*, 633 So. 2d 1111, 1114 (Fla. 3d DCA 1994))). In the first round of state court litigation, the Fund also contended that Dupont failed to comply with the conditions precedent in the original contract. Although the Fund won a motion for summary judgment on this ground, that judgment was overturned. *Gallagher*, 918 So. 2d at 350. In so ruling, the appellate court clarified that Dupont's remaining obligation was to demonstrate: (1) coverage, (2) a wrongful refusal to defend, and (3) that the settlement was reasonable and made in good faith. *Id.* at 348 (citing *Ahern*, 788 So. 2d at 372).
[9] Doc. No. 26-1 at 15.
[10] *Id.* (emphasis added).
[11] Doc. No. 26-1.
[12] *See generally id.*
[13] *Id.* at 15 (emphasis added).
[14] *Id.* at 13-15.
[15] *Id.* at 16.
[16] *Id.* at 2, 16.

other judges in the ensuing months.[17] Third, Charles was consistently "not straightforward and honest" in his communications with the Attorney General, obscuring his knowledge of numerous facts so as "[to] construct the scenario that would allow him to present . . . [his client's] inflated claim."[18] Fourth, after using "deception and chicanery to wrongfully exaggerate both the damages and the fees claimed in the hopes that he would be able to cause the State to cower when confronted with payment of such a large amount," Charles attempted to preserve the Agreement "through all kinds of contrived arguments."[19]

After its decision was affirmed on appeal,[20] the Circuit Court reiterated its sentiment in the Costs and Attorney's Fee Judgment ("Fee Judgment"), maintaining that Charles had advanced a claim "not free from fraud and collusion" and had engaged in "overt actions . . . to perpetrate a fraud upon . . . [the] court and . . . the State of Florida."[21] Relying on the egregious nature of Charles's misconduct, described in the Final Judgment, the court imposed sanctions against Charles and Dupont, jointly and severally, for $407,363.95.[22]

Charles filed for Chapter 7 bankruptcy relief a few months after the Circuit Court issued the Fee Judgment, effectively moving the dispute to this Court.[23] Plaintiffs now argue in this adversary proceeding that the Fee Judgment debt is nondischargeable under §§ 523(a)(4), 523(a)(6), and 523(a)(7) of the Bankruptcy Code.[24]

Plaintiffs seek relief on summary judgment pursuant to Federal Rule of Civil Procedure 56.[25] Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows

---

[17] *Id.* at 16.
[18] *Id.*
[19] *Id.*
[20] Doc. No. 26-2.
[21] Doc. No. 26-3 at 2, 4.
[22] *Id.*
[23] Main Case No. 6:11-bk-14989-KSJ.
[24] Doc. No. 1.
[25] Fed. R. Civ. P. 56, made applicable to adversary proceedings by Fed. R. Bankr. P. 7056.

that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[26] The moving party has the burden of establishing the right to summary judgment.[27] A "material" fact is one that "might affect the outcome of the suit under the governing law."[28] A "genuine" dispute means that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[29] Once the moving party has met its burden, the nonmovant must set forth specific facts showing there is a genuine issue for trial.[30] In determining entitlement to summary judgment, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."[31]

To support their summary judgment motion, the Plaintiffs rely on the the findings made by the Circuit Court, contending they should be given collateral estoppel effect. If the Circuit Court's findings meet the requirements of collateral estoppel, they can be treated as undisputable facts by this Court in determining the Plaintiffs' entitlement to summary judgment.[32] But the ultimate issue of dischargeability is a separate legal question to be addressed by this Court in the exercise of its jurisdiction.[33]

To determine whether a state court judgment should be afforded collateral estoppel effect, "the collateral estoppel law of that state must be applied to determine the judgment's preclusive effect."[34] Here, Florida's collateral estoppel requirements control. Under Florida law, the party seeking to establish the prior judgment's findings as preclusive must prove: (1) the issue previously decided is identical to the one now before this Court, (2) the issue was "actually

---

[26] Fed. R. Civ. P. 56(a).
[27] *Fitzpatrick v. Schlitz (In re Schlitz)*, 97 B.R. 671, 672 (Bankr. N.D. Ga. 1986).
[28] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986); *FindWhat Investor Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011) .
[29] *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510.
[30] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 10 S. Ct. 1348 (1986).
[31] *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007).
[32] *Halpern v. First Georgia Bank (In re Halpern),* 810 F.2d 1061, 1064 (11th Cir. 1987)
[33] *St. Laurent v. Ambrose (In re St. Laurent)*, 991 F.2d 672, 675-76 (11th Cir. 1993).
[34] *Id.* at 675-76.

litigated" in the prior proceeding, (3) the Circuit Court's previous determination was "a critical and necessary part of the judgment," and (4) the standard of proof was "at least as stringent as the standard of proof" in the later action.[35] Here, the Plaintiffs have established all four prongs of the collateral estoppel test.

As to the "identical issue" prong, "identical issue" does not necessarily mean identical cause of action. Collateral estoppel applies where two causes of action are different, "in which case the judgment in the first suit only estops the parties from litigating in the second suit issues—that is to say points and questions—common to both causes of action and which were actually decided in the prior litigation."[36] Findings relating to Charles's own actions, i.e. that he deliberately misrepresented his client's claim for the sake of obtaining a greater recovery than the evidence supported and earning substantial attorney fees for himself, satisfy the "identical issue" requirement because this Court otherwise would need to make those findings in order to determine whether the exceptions to discharge apply to the debt.[37] Thus, the issues and findings decided by the Circuit Court affirmed on appeal satisfy the "identical issue" requirement.

Unquestionably, the issues were actually, if not extensively, litigated in the state court. The enforceability of the Agreement, and consequently the issues of good faith, fraud, and collusion, were actually litigated in the Circuit Court. Actual litigation requires that the issue was effectively raised in the prior action and that the losing party had "a fair opportunity procedurally, substantively and evidentially" to contest the issue.[38] Charles was involved in the lawsuit, had a full opportunity to present his case, and was afforded appellate review. The

---

[35] *Id.* at 676.
[36] *Gordon v. Gordon*, 59 So. 2d 40, 44 (Fla. 1952); *Cook v. State*, 921 So. 2d 631, 634 (Fla. 2d DCA 2005).
[37] *See In re Houston*, 305 B.R. 111, 117-18 (2003).
[38] *In re Bush,* 62 F.3d 1319, 1323 (11th Cir. 1995).

Circuit Court issued a reasoned final judgment which was affirmed on appeal.[39] All issues of fact and law pertinent to this Court's nondischargeability determination were actually litigated.

The findings relevant to this Court's determination—those relating to Charles's misconduct, the impetus for the Fee Judgment—were critical and necessary to the Circuit Court's judgment. One element Dupont was required to prove to enforce the Agreement under Florida law was that the Agreement was "reasonable and made in good faith."[40] Moreover, the presence of fraud or collusion surely will invalidate a *Coblentz* agreement.[41] The Circuit Court invalidated the Agreement on all of these bases, finding that the Agreement was patently unreasonable, not made in good faith, and was the product of fraud.[42] Thus, findings as to Charles's conduct in relation to these determinations were critical and necessary to the judgment.

Lastly, the preponderance of the evidence standard of proof was identical in each case.[43] All four elements of Florida's collateral estoppel requirements are met. Findings presented in the Final Judgment relating to Charles's fraud, misrepresentations, bad faith, and the conduct which gave rise to the Fee Judgment are given collateral estoppel effect. The Court now turns to determining whether the facts established by the Final Judgment and the Fee Judgment are

---

[39] Doc. No. 26-2.

[40] *See Gallagher v. Dupont*, 918 So. 2d 342, 348 (Fla. 5th DCA 2005) (directing Circuit Court to consider these issues); *Ahern v. Odyssey Re (London) Ltd.*, 788 So. 2d 369, 372 (Fla. 4th DCA 2001).
 In *Steil v. Florida Physicians' Ins. Reciprocal*, 448 So. 2d 589, 592 (Fla. 2d DCA 1984), the Florida appellate court determined that the standard of "collusion or fraud" was too high a bar to invalidate a *Coblentz* agreement because although an insured's conduct may not rise to fraud, he still has no incentive to negotiate a settlement reasonable in amount because he will not be obligated to pay. *Steil*, 448 So. 2d at 592; *see Shook v. Allstate Ins. Co.*, 498 So. 2d 498, 500-01 (Fla. 4th DCA 1986). "Thus [a *Coblentz* settlement] may not be enforced against the carrier if it is unreasonable in amount or tainted by bad faith." *Steil*, 448 So. 2d at 592.

[41] Although *Steil* appeared to replace the "fraud or collusion" standard with the lesser "reasonableness and good faith" standard in Florida, a finding of fraud or collusion would still suffice to invalidate a *Coblentz* agreement. *See Coblentz v. Am. Sur. Co. of New York*, 416 F.2d 1059 (5th Cir. 1969); *Galagher*, 918 So. 2d at 349 (directing Circuit Court to evaluate "the reasonableness and lack of collusion or fraud").

[42] The Circuit Court found that the Agreement's total, more than $500,000, was more than five times greater than any feasible recovery, noting that highest range of a reasonable judgment would not be more than $37,500, including attorney fees. *See* Doc. No. 26-1 at 9-15. The Circuit Court specifically found the agreement was not made in good faith and was tainted with fraud and collusion. *Id.* at 15-16.

[43] *Compare* Doc 26-1 at 15, *with Grogan v. Garner*, 498 U.S. 279, 291, 111 S. Ct. 654, 661, 112 L. Ed. 2d 755 (1991).

sufficient to prove that the debt is nondischargeable under the Plaintiffs' causes of action.[44]

Charles does not necessarily challenge the Circuit Court's judgments on collateral estoppel grounds or substantively address the Plaintiffs' § 523 claims. Instead, he raises broader arguments against granting of summary judgment. First, Charles decries the merits of the Final Judgment and the Fee Judgment, claiming they were "entirely based upon a flawed and unfair distortion of the law and evidence."[45] Charles apparently asks this Court "to review the Circuit Court's judgment as an appellate court."  Second, Charles argues that the Circuit Court did not have subject matter jurisdiction to review the Agreement.  Third, Charles attempts to use the Code's "fresh start" policy as a shield.

On asking this Court to review a valid and binding state court judgment, the *Rooker-Feldman* doctrine "precludes federal district courts from effectively exercising appellate jurisdiction over claims actually decided by a state court and claims inextricably intertwined with a prior state-court judgment."[46] The doctrine dictates that lower federal courts possess no subject matter jurisdiction over claims seeking review of state court judgments.[47] Charles's opposition raises precisely this sort of demand, claiming he now "seek[s] a fair and unbiased forum for review and determination of the facts and issues."[48] This Court does not have the power to undertake such a review and must rely on the findings made by the Circuit Court.

Charles next argues the Circuit Court lacked subject matter jurisdiction to review the original Agreement.  He appears blind to the fact that the appellate court remanded the case back

---

[44] To the extent this Court does relies on findings made in the Fee Judgment (Doc. No. 26-3), it also satisfies the Florida's collateral estoppel requirements. The Court however, looks to the Fee Judgment more to glean the purpose for the fees and costs award, not necessarily to rely on any factual or legal findings.
[45] Doc. No. 49 at 2.
[46] *Mo's Express, LLC v. Sopkin*, 441 F.3d 1229, 1233 (10th Cir. 2006) (internal quotation marks omitted); *accord Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S. Ct. 1517, 1521, 161 L. Ed. 2d 454 (2006).
[47] *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 555 (7th Cir. 1999).
[48] Doc. No. 49 at 5.

to the Circuit Court to do exactly that—determine if the Agreement was enforceable. As a part of this determination, the Circuit Court was required to find whether the Agreement was "reasonable and made in good faith" and free from "fraud or collusion."[49] Charles's argument is without merit.

As to the last argument, that the "fresh start" given in bankruptcy trumps the state court rulings, Mr. Charles is simply wrong. Although the central purpose of the Bankruptcy Code is to allow insolvent debtors to enjoy a "fresh start . . . unhampered by the pressure and discouragement of preexisting debt," this broad aim is limited to the "honest but unfortunate debtor."[50] The statutory provisions governing nondischargeability reflect a deliberate congressional decision to except certain types of debts from the discharge.[51] "Congress evidently concluded that the creditors' interest in recovering full payment of debts in these categories outweighed the debtors' interest in a complete fresh start."[52] With that in mind, the Court now will address the Plaintiffs' § 523 counts in turn, relying on the rulings and findings of the state court.

### **Defendant does not Qualify as a Fiduciary under § 523(a)(4)**

Section 523(a)(4) excepts from a debtor's discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."[53] Plaintiffs proceed under the "fraud or defalcation while acting in a fiduciary capacity" prong, arguing that Charles, as an attorney and officer of the court, owed a fiduciary duty to the courts where he committed his fraudulent acts. So the argument goes, by committing fraud on the court through his overt

---

[49] *Gallagher v. Dupont*, 918 So. 2d 342, 344 (Fla. 5th DCA 2005).
[50] *Grogan v. Garner*, 498 U.S. 279, 286, 111 S. Ct. 654, 659, 112 L. Ed. 2d 755 (1991) (citing *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934)).
[51] *Id.*
[52] *Id.*
[53] 11 U.S.C. § 523(a)(4).

misrepresentations, Charles committed "fraud . . . while acting in a fiduciary capacity."[54] Despite the Plaintiffs' creative arguments, the Court declines to extend the historically narrow definition of "fiduciary" under § 523(a)(4).

The definition of "fiduciary" in § 523(a)(4) is a question of federal law.[55] Both as used in the Bankruptcy Act and in this Code subsection, the term "fiduciary" is limited to instances involving express or technical trusts.[56] An express or technical trust exists where there is: "(1) a segregated trust res; (2) an identifiable beneficiary; and (3) affirmative trust duties established by contract or by statute."[57]

No such express trust exists. Nor do Charles's duties as a fiduciary to the Court create a fiduciary relationship encompassed by § 523(a)(4). Admittedly, Charles, as an attorney, had fiduciary duties to both his client and the courts in which he appeared.[58] And the Circuit Court specifically found him guilty of "perpetrat[ing] a fraud upon . . . [the] court."[59] But, even if § 523(a)(4)'s definition of "fiduciary" included this type of relationship, and it does not, the debt is owed to the *Plaintiffs*, not the entities to whom Charles owed a fiduciary duty—the court and his client. Ultimately, although he may have committed fraud in some sort of fiduciary duty, it is not the type of fiduciary duty contemplated by § 523(a)(4). The Court will dismiss Count I asserting nondischargeability under § 523(a)(4).

---

[54] *Id.*

[55] *In re Cochrane*, 124 F.3d 978, 984 (8th Cir. 1997) (citing *Lewis v. Scott*, 97 F.3d 1182, 1185 (9th Cir. 1996)).

[56] *See, e.g.*, *Quaif v. Johnson*, 4 F.3d 950, 953 (11th Cir. 1993) ("The Supreme Court has consistently held that the term 'fiduciary' is not to be construed expansively, but instead is intended to refer to 'technical' trusts."); *R & R Ready Mix, Inc. v. Freier (In re Freier)*, 402 B.R. 891, 899 (9th Cir. BAP 2009); *Woo v. Donelson (In re Donelson)*, 410 B.R. 495, 504 (Bankr. S.D. Tex. 2009). *See also Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333, 79 L. Ed. 393, 55 S. Ct. 151 (1934) (construing term under the Bankruptcy Act).

[57] *In re Kutchins*, 2008 WL 5633634 at *7 (Bankr. M.D. Fla. Dec. 5, 2008).

[58] *See, e.g.*, *Campbell v. Mercer Univ.*, 5:12-CV-181 HL, 2013 WL 949881 (M.D. Ga. Mar. 11, 2013) (attorney's unfounded allegations amounted to breach of his fiduciary duty to the court); *RCI HV, Inc. v. Transtec (RC) Inc.*, 2004 WL 1197246 at *11 (S.D.N.Y. May 28, 2004) ("An attorney is an officer of the court and owes the court fiduciary duties and loyalty.").

[59] Doc. No. 1-1 at 2, 4.

### **Plaintiffs have Proven Willful and Malicious Injuries under § 523(a)(6)**

Plaintiffs also argue that the debt imposed by the Fee Judgment should be determined nondischargeable under § 523(a)(6) of the Code. Section 523(a)(6) excepts debts for "willful and malicious injury by the debtor to another entity or to the property of another entity."[60] To prevail on such a claim, a plaintiff must prove by a preponderance of evidence that a debtor: 1) deliberately and intentionally; 2) injured the plaintiff or the plaintiff's property; 3) by a willful and malicious act."[61]

Charles's misrepresentations and fraud committed on the Circuit Court and federal court were deliberate and intentional. Charles was fully cognizant of the dearth of "competent, substantial evidence for his client's damage claim, fee or costs," yet he still prosecuted Dupont's case against the Estate and demand payment for that "coerced" sum from the Fund.[62] He also made deliberate and intentional misrepresentations that the damages in the Agreement were judged reasonable by an independent expert.[63] Charles's actions absolutely injured the Plaintiffs because they incurred substantial costs defending the "baseless claim" he advanced during the years and years of litigation for no legitimate reason, other than Charles and his client wanted to extract monies from the State of Florida.[64]

Willfulness and malice are separate and distinct. "Willfulness" implies intentional behavior; "malice" connotes a malevolent purpose for the debtor's action.[65] A debtor commits a willful injury when he commits an intentional act for the purpose of causing injury or which he

---

[60] 11 U.S.C. § 523(a)(6).
[61] *In re Howard*, 261 B.R. 513, 520 (Bankr. M.D. Fla. 2001) (citing *Hope v. Walker (In re Walker)*, 48 F.3d 1161, 1163-65 (11th Cir. 1995)).
[62] Doc. No. 26-1 at 15.
[63] Doc. No. 26-1 at 16.
[64] *See* Doc. No. 26-3 at 2.
[65] *Howard*, 261 B.R. at 520.

knows is substantially certain to cause injury.[66] "Substantial certainty exists if a debtor knew and appreciated the substantial likelihood of injury to the party objecting to discharge."[67] On the other hand, a malicious act is one which is "wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will."[68]

The factual circumstances of this case are similar to those presented in *In re Auffant*.[69] In *Auffant*, a state court jury found that the debtor had intentionally concealed or represented material facts and circumstances relating to an insurance claim and otherwise engaged in fraudulent conduct relating to the claim.[70] The state court ruled that the defendant was entitled to an award of attorney fees and costs.[71]

In determining whether the plaintiff's misconduct in the state court was "willful" as construed in § 523(a)(6), Judge Williamson found that the debtor "clearly intended to cause injury [to the defendant insurer] by the prosecution of her inflated false claim."[72] Here, similar to the debtor in *Auffant*, Charles intended to cause injury to the Plaintiffs by using "fraud and manipulation . . . to take a relatively minor yet meritorious claim and use deception and chicanery to wrongfully exaggerate both the damages and fee claimed in hopes that he would be able to cause the State to cower when confronted with the payment of such a large amount."[73] Charles's actions were willful. He intended to cause the Plaintiffs to settle an inflated claim which had no basis in fact or law.

Further, Charles's actions were wrongful. Although Charles knew of the limited viability

---

[66] *See id.*; *In re Dowdell*, 406 B.R. 106, 114 (Bankr. M.D. Fla. 2009); *In re Vestal*, 256 B.R. 326, 329 (Bankr. M.D. Fla. 2000).
[67] *Vestal*, 256 B.R. at 329; *see Howard*, 261 B.R. at 520.
[68] *Hope v. Walker (In re Walker)*, 48 F.3d 1161, 1164 (11th Cir. 1995).
[69] 268 B.R. 689 (Bankr. M.D. Fla. 2001). *See also In re Houston*, 305 B.R. 111 (Bankr. M.D. Fla. 2003).
[70] *Auffant*, 268 B.R. at 691.
[71] *Id.* at 692.
[72] *Id.* at 694.
[73] Doc. No. 26-1 at 16.

of his client's claim, he carefully "construct[ed] the scenario that would allow him to present . . . [his client's] inflated claim," which was predicated on continued "lie[s]" and "misrepresentation[s]."[74] Charles has not set forth any facts to excuse his actions, which were conclusively determined in the Final Judgment. He advances many creative legal arguments in an effort to attack the validity of the Final Judgment and the Fee Judgment but does not provide an explanation as to his actions before the prior courts. Charles's actions rise to the level of malicious within the meaning of § 523(a)(6).

Having determined that Charles's actions were willful and malicious, the next issue is whether the Fee Judgment debt can be held nondischargeable.[75] Section 523 states that "debt for" the debtor's willful and malicious conduct is nondischargeable. In nondischargeability actions under § 523(a)(2)(A), damages aside from the "money, property, or services, or credit" the debtor fraudulently obtained, such as attorney fees, are routinely determined nondischargeable along with the actual money or property fraudulently obtained by the debtor.[76] The Supreme Court, in examining the issue, reasoned that "debt for" in § 523 "is used to mean 'debt as a result of,' 'debt with respect to,' 'debt by reason of,' and the like."[77] The same analysis applies to a § 523(a)(6) cause of action.[78] Debts "as a result of" a debtor's willful and malicious conduct are excepted from the debtor's discharge.[79]

The debt imposed by the Fee Judgment clearly arose as a result of Charles's willful and malicious conduct. The Circuit Court imposed the Fee Judgment based on its inherent power "as a result of the overt actions by Mr. Charles and his client to perpetrate a fraud on upon this court

---

[74] *Id.* at 15-16.
[75] In *Affuant*, the court bifurcated the issues of 1) whether the debtor's actions were "willful and malicious" and 2) whether a debt for attorney fees stemming from those actions can be held nondischargeable. *Auffant*, 268 B.R. at 693.
[76] *See id.* at 695-97 (compiling decisions).
[77] *Id.* at 695.
[78] *Id.*; *In re Houston*, 305 B.R. 111, 115-16 (Bankr. M.D. Fla. 2003).
[79] *Houston*, 305 B.R. at 116; *Auffant*, 268 B.R. at 695-97.

and upon the State of Florida."[80]  The Circuit Court also maintained that the elements of § 57.105, Florida Statutes, also were satisfied because "the entire action is now and has always been without any legal basis in fact or law."[81]

The debts created by the Final Judgment and the Fee Judgment are nondischargeable pursuant to § 523(a)(6) of the Bankruptcy Code because it results from Charles's intentional, willful, and malicious conduct designed to injure the Plaintiffs or their property. The Court will grant summary judgment in favor of the Plaintiffs and against the Debtor and Defendant on Count II.

### **The Fee Judgment is Not Dischargeable under § 523(a)(7)**

Plaintiffs lastly argue the debt is nondischargeable under § 523(a)(7).  To have a debt declared nondischargeable under this Section, a plaintiff must show that the debt is (1) a fine, penalty or forfeiture, (2) payable to and for the benefit of a governmental unit, and (3) not compensation for actual pecuniary loss.[82] As the Supreme Court has emphasized, this subsection "creates a broad exception for all penal sanctions, whether they denominated fines, penalties, or forfeitures," subject to only "two qualifying phrases; the fines must be both payable to and for the benefit of a governmental unit, and not compensation for actual pecuniary loss."[83] The debt imposed by the Fee Judgment satisfies these elements.

The second element clearly is established.  The Fee Judgment is payable to the Plaintiffs: the State Risk Management Trust Fund, a "state self-insurance fund" created by the legislature and operated by Florida's Department of Financial Services, and the Chief Financial Officer of

---

[80] Doc. No. 26-3 at 4.
[81] *Id. See generally* Fla. Stat. § 57.105 (2013) (providing for award of sanctions against parties or attorneys who advance baseless claims).
[82] 11 U.S.C. § 527(a)(7); *Disciplinary Bd. v. Feingold (In re Feingold)*, 730 F.3d 1268, 1273 (11th Cir. 2013), *cert. denied*, 188 L. Ed. 2d 919 (2014); *In re Towers*, 162 F.3d 952, 954 55 (7th Cir. 1998), *cert. denied*, 527 U.S. 1004, 119 S. Ct. 2340, 144 L. Ed. 2d 237 (1999).
[83] *Kelly v. Robinson*, 479 U.S. 36, 51, 107 S. Ct. 353, 362, 93 L. Ed. 2d 216 (1986).

the State of Florida, in his official capacity and an agent of the State. As described in the Fee Judgment, the fees to be recovered were "incurred by government entities" due to its need "to defend a fraudulent claim from the outset."[84] Plaintiffs qualify as "governmental units."

Determining whether the Fee Judgment creates a debt for a "fine, penalty, or forfeiture" requires a more nuanced analysis. In *In re Feingold*,[85] the Eleventh Circuit Court of Appeals looked to two factors to determine whether a fees and costs judgment imposed as part of an attorney disciplinary proceeding qualified as a fine or penalty: 1) the purpose of the system that imposed the fee judgment, and 2) the discretionary nature of the fee judgment.[86] The court found that the cost judgment imposed by an attorney discipline proceeding was nondischargeable under § 523(a)(7) because the purpose of the attorney discipline system was "deterrence and protection of the public" and the imposition of the cost assessment was discretionary.[87]

In this case, the Circuit Court based its Fee Judgment on both its inherent power and also under § 57.105 of the Florida Statutes.  The purposes of these statutes will help delineate whether the debt qualifies as a fine or penalty.  The inherent power of Florida courts to impose attorney fees and costs judgments is primarily used to punish and deter future instances of bad faith or misconduct.[88] Likewise, § 57.105 of the Florida Statutes also has punitive and deterrent aims. Awards of fees or sanctions under this section are aimed "to discourage baseless claims, stonewall defenses and sham appeals in civil litigation by placing a price tag through attorney's fees awards on losing parties who engage in these activities. Such frivolous litigation constitutes

---

[84] Doc No. 26-3 at 2.
[85] 730 F.3d 1268, 1274 (11th Cir. 2013) *cert. denied*, 134 S. Ct. 1880 (2014).
[86] *Id.* at 1273-75.
[87] *Id.* at 1274-75.
[88] *See, e.g.*, *Patsy v. Patsy*, 666 So. 2d 1045, 1047 (Fla. 4th DCA 1996) (imposing attorney fee and costs judgment as punishment for attorney's bad faith litigation) *Sanchez v. Sanchez*, 435 So. 2d 347, 350 (Fla. 3rd DCA 1983) (using inherent power to impose fees on attorney for "unnecessary consumption of judicial effort"). *See generally Moakley v. Smallwood*, 826 So. 2d 221 (Fla. 2002) (affirming use of inherent power).

a reckless waste of judicial resources as well as the time and money of prevailing litigants."[89] And so, both methods of imposing attorney fees and costs are intended to punish and deter similar future behavior.

The Fee Judgment also was completely discretionary. A court's inherent power to impose fees and costs is wholly based on the discretion of that court. The imposition of fees under § 57.105 of the Florida Statutes also is discretionary; the statute requires a court to make many discretionary findings before fees can be awarded under the statute.[90] Further, on appeal, a decision to impose fees under § 57.105 is reviewed on the abuse of discretion standard.[91] Because the goal of the underlying bases for imposing the Fee Judgment are punitive and deterrent, and the judgment was granted within the discretion of the Circuit Court, the debt created by the Fee Judgment qualifies as a "fine or penalty" under § 523(a)(7).

The last determination is whether the debt is compensation for actual pecuniary loss. If it is compensatory, then the debt falls outside of § 523(a)(7). For the "not compensation for actual pecuniary loss" element, courts "look to the context in which the penalty [was] imposed to determine whether its purpose is truly compensatory."[92] In *Feingold*, the Eleventh Circuit explained that "[e]ven where a debt is intended to help defray the expense of government, it may not be dischargeable if its primary purpose is penal."[93]

As the Fee Judgment indicates, the Circuit Court naturally sought only to determine "a

---

[89] *Whitten v. Progressive Case. Ins. co.*, 410 So. 2d. 501, 505 (Fla. 1982); *Carnival Leisure Indus., Ltd. v. Holzman*, 660 So. 2d 410, 412 (Fla. 4th DCA 1995); *see also, e.g.*, *Fla. Dep't of Revenue ex rel. D.H. v. Hannah*, 745 So. 2d 1055, 1056 (Fla. 3d DCA 1999).
[90] *See generally* Fla. Stat. § 57.105(1)(a) & (b), (3) (2013).
[91] *Yakavonis v. Dolphin Petroleum, Inc.*, 934 So. 2d 615, 618 (Fla. 4th DCA 2006).
[92] *Disciplinary Bd. v. Feingold (In re Feingold)*, 730 F.3d 1268, 1275 (11th Cir. 2013) *cert. denied*, 134 S. Ct. 1880 (2014).
[93] *Id.*

reasonable fee," not to divine compensation for actual financial loss.[94] This point was clarified in one of the cases cited by the Circuit Court in the Final Judgment, *City of Boca Raton v. Faith Baptist Church of Boca Raton, Inc*.[95] There, the appellee objected to a sanctions award under § 57.105 on the grounds that it was based on a reasonable fee and not the actual costs the city attorney incurred defending the action, i.e., a pro rata calculation of the city attorney's salary, overhead costs, etc.[96] The court denied the appeal, citing the punitive and deterrent, not compensatory, purpose of the statute: "to discourage baseless claims, stonewall defenses."[97] The mere fact that the amount Fee Judgment is based on reasonable attorney fees does not transform its purpose from punitive and deterrent to compensatory.[98] The state court was not trying to reimburse the Plaintiffs dollar for dollar for its costs but, instead, was attempting to fairly punish Charles for his actions by imposing a fee assessed by a reasonable approximation of the harm he caused to the Plaintiffs. The method the state court employed is a useful measuring stick for the sanctions amount, no more. The Fee Judgment is *not* compensation for actual pecuniary loss.

The debt created by the Fee Judgment is a fine or penalty payable to a governmental unit and is not compensation for actual pecuniary loss. Accordingly, the debt is nondischargeable under § 523(a)(7) of the Bankruptcy Code. The Court will enter summary judgment in favor of the Plaintiffs and against the Debtor and Defendant on Count III.

---

[94] Doc No. 26-3 at 2. Indeed, the Plaintiffs waived many fees which would have been included in a determination of their actual costs expended. *Id.* at 3.
[95] 423 So. 2d 1021 (Fla. 4th DCA 1982).
[96] *Id.*
[97] *Id.* at 1022.
[98] *Feingold*, 730 F.3d at 1276.

**Conclusion**

Charles made numerous misrepresentations to multiple tribunals, federal and state, throughout this fifteen-year saga of litigation. After obtaining an outrageous consent judgment through his deceit, he obstinately attempted to enforce the fraudulently obtained judgment for years, causing the State and the judiciary to expend considerable resources. The Circuit Court found that because of his fraudulent and deceptive actions, an award of sanctions for fees and costs was appropriate. Based on the Circuit Court's findings as to Charles's actions, this Court determines that the debt for sanctions arising from the Fee Judgment is nondischargeable under 11 U.S.C. §§ 523(a)(6) and 523(a)(7). Plaintiffs' motion for summary judgment is granted as to these counts. In light of this ruling, Charles's counterclaim is denied.[99] The Court will dismiss the Count I raised under § 523(a)(4). A separate final judgment consistent with this Memorandum Opinion shall be entered.

DONE AND ORDERED in Orlando, Florida, June 27, 2014.

KAREN S. JENNEMANN
Chief United States Bankruptcy Judge

Blaine H. Winship, attorney for the Plaintiffs, is directed to serve a copy of this order on interested parties and file a proof of service within 3 days of entry of the order.

---

[99] Charles's counterclaim sought an injunction which amounted to a request to disregard the Circuit Court's Final Judgment. *See* Doc. No. 5 at 4-5. As stated *supra*, the court was precluded from re-examining the issues in the Final Judgment relating to the validity of the *Coblentz* Agreement. Further, the Court denies as moot the Plaintiffs' Motion to Strike the Defendant's Counterclaim (Doc. No. 8).